THE LEICHTER FIRM, APC
Kevin J. Leichter, Esq. (SBN 154143)
Stacey Klein, Esq. (SBN 291971)
10203 Santa Monica Boulevard
Fourth Floor
Los Angeles, California 90067
Tel: 310.229.0000
Email: kleichter@theleichterfirm.com

Attorneys for Plaintiff
SP'S CRYSTAL EDGE, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SP'S CRYSTAL EDGE LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD THE LION HEART LLC, state of incorporation unknown; WONDERPHIL ENTERTAINMENT LLC, a California limited liability company; STEFANO MILLA, an individual; YOUNG N FREE FILMS, LLC, a California limited liability company; and DOES 1 through 10;<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF WRITTEN CONTRACT**<br>**(2) BREACH OF WRITTEN CONTRACT**<br>**(3) REFORMATION**<br>**(4) REFORMATION**<br>**(5) THREATENED COPYRIGHT INFRINGEMENT**<br>**(6) THREATENED COPYRIGHT INFRINGEMENT**<br>**(7) INJUNCTIVE RELIEF**<br>**(8) INJUNCTIVE RELIEF**<br>**(9) DECLARATORY RELIEF**<br>**(10) DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SP'S CRYSTAL EDGE LLC ("Crystal Edge" or "Plaintiff") alleges as follows:

## THE PARTIES

1.  Plaintiff is, and at all times material hereto, was, a limited liability company organized under the laws of the State of California with its principal place of business in Los

1  Angeles, California.

2. Crystal Edge is engaged in the business, *inter alia,* of distributing independent motion pictures, including *Richard the Lionheart: Rebellion* ("*Lionheart*") and *The Last Supper a/k/a /Going to America* ("*The Last Supper*") (collectively, the "Pictures"), which are the subject of certain claims in this action.

3. Defendant Richard the Lionheart, LLC ("RLL") is and, at all times material hereto was, a limited liability company whose state of organization is unknown.

4. Defendant Stefano Milla ("Mr. Milla") is and, at all times material hereto, was an individual residing in Sierra Madre, California.

5. Defendant Young N Free Films, LLC ("Young N Free"), is and, at all times material hereto, was a California limited liability company with its principal place of business is Ripon, California.

6. Defendant Wonderphil Entertainment, LLC ("Wonderphil") is and, at all times material hereto was, a California limited liability company with its principal place of business in San Francisco, California.

7. Plaintiff further alleges that each of the defendants herein identified as DOES 1 through 10 inclusive, is responsible and liable to Plaintiff in some manner for the acts and occurrences herein complained. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## JURISDICTION AND VENUE

8. As alleged herein, this Court has personal jurisdiction over Defendants Wonderphil, Young N Free, and Mr. Milla as they are citizens or domiciliaries of the State of California and over Defendants Wonderphil and RLL as they conduct substantial business in this District, including the conduct that forms the basis of the allegations herein.

9. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 1400(a) because Defendant Milla resides in this District, Plaintiff's claims arose in this District and a substantial portion of the events giving rise of these claims occurred in this District.

10. The Court has subject matter jurisdiction over Plaintiff's claim for copyright infringement and related claims pursuant to 28 U.S.C. §§ 1331 and 1338.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## GENERAL FACTUAL ALLEGATIONS

### Richard the Lionheart Agreement

12. Based on records of the Copyright Office, Plaintiff is informed and believes that the original copyright claimant for the picture *Lionheart* is Young N Free.

13. Based on representations from RLL, Plaintiff is informed and believes that RLL, through its principal Phil Gorn, acted as sales agent for Young N Free and, with the authorization of Young N Free, had the right to enter into distribution agreements for the picture *Lionheart*.

14. On or about December 10, 2014, RLL (the sales agent) and Crystal Edge (the distributor) entered into a contract entitled "distribution deal memo" (the "Lionheart Deal Memo"), granting to Crystal Edge the right to distribute *Lionheart* in the United States, Canada, Australia, New Zealand and Scandinavia (collectively, the "Lionheart Territories"). A true and correct copy of the distribution deal memo for the *Lionheart* is attached hereto as Exhibit A.

15. The Lionheart Deal Memo granted Crystal Edge all exploitation rights to *Lionheart* in the Lionheart Territories (including, but not limited to, Video, Pay TV and Free TV, PayPerView, Video on Demand, Ancillary, ClosedNet and Internet) except theatrical rights (collectively, the "Lionheart Rights").

16. The Lionheart Deal Memo was recorded with the US Copyright Office.

17. A $60,000 advance, paid against and fully recoupable from Crystal Edge's royalties and receipts in the Lionheart Territories, was payable, pursuant to paragraph six of the Lionheart Deal Memo as follows: (i) 20% upon full and accepted delivery (ii) 20% upon the release of the *Lionheart* by Crystal Edge in North America and (iii) 60% upon 90 days after the release of the *Lionheart* in North America.

18. Pursuant to paragraph three of the Lionheart Deal Memo, there were certain conditions precedent that had to occur before Crystal Edge's payment obligations were triggered,

which conditions could only be waived by Crystal Edge "in its sole discretion." These conditions included full delivery of the picture by RLL at its sole cost no later than 15 days from the date of the Lionheart Deal Memo, RLL providing clean chain of title in and to *Lionheart*, and Crystal Edge's acceptance of the delivery of the picture.

19. While the parties had intended to enter into a long form agreement memorializing additional requirements and terms, the Lionheart Deal Memo by its terms was "binding" and "in full force and effect as the agreement between the parties" whether or not a long form agreement was ever signed.

20. The parties were negotiating the long form agreement for months and it was Crystal Edge's understanding that the parties were at the end of the negotiation process with only a few terms left to finalize. In fact, Crystal Edge had been waiting on RLL's response to finalize the long form agreement when RLL began trying to escape its contractual obligations by claiming, among other things, that Plaintiff's name was not correctly listed in the Lionheart Deal Memo. Attached as Exhibit B is a true and correct copy of a letter dated July 24, 2015.

21. The signature page in the Lionheart Deal Memo identified the parties as "Richard the Lionheart, LLC" and "Crystal Edge, LLC."

22. It was the intent of the parties that the entities entering into the Lionheart Deal Memo be identified as "SP's Crystal Edge, LLC" and "Richard the Lion Heart, LLC" – which are their true names. The fact that this error occurred is the result of a scrivener's errors in the recital of the entities' names. Attached as Exhibit C is a true and correct copy of a letter dated August 17, 2015.

23. These scrivener's errors were the result of a mutual and/or unilateral mistake, which prejudiced no party.

24. Defendant RLL also claimed that Plaintiff failed to tender the advance for the picture, however Plaintiff's obligation to tender payment was conditioned, among other things, on delivery being perfected, which has yet to occur.

25. Instead of perfecting delivery as it was contractually obligated to do almost a year ago, on July 22, 2015 RLL took the position that there was no valid agreement between the parties

4
COMPLAINT

1  and therefore, Crystal Edge has no authority or right to represent, license, sell, or market the
2  *Lionheart* anywhere in the world through any media.  Attached as Exhibit D is a true and correct
3  copy of a letter dated July 22, 2015.

4  26.  On even date RLL expressly repudiated the Lionheart Deal Memo (to the extent, as
5  RLL claims, there was a valid agreement) by refusing to perfect delivery, demanding the return of
6  its master of the picture and all other elements and documentation previously delivered, and by
7  expressly rescinding the deal memo.

8  27.  As a result, RLL has stated that it is attempting to license the picture elsewhere,
9  which is a violation of the Lionheart Deal Memo and Crystal Edge's exclusive copyright license.
10  Attached as Exhibit E is a true and correct copy of a letter dated July 30, 2015.

11  28.  Furthermore, in an attempt to damage Plaintiff's business relationships, RLL
12  incorrectly notified Sony Pictures Entertainment that Crystal Edge did not have the right to license
13  it the picture.  Attached as Exhibit F is a true and correct copy of the letter dated September 2,
14  2015.

**The Last Supper Agreements**

16  29.  Based on records of the Copyright Office, Plaintiff is informed and believes that the
17  original copyright claimant for the picture *The Last Supper* is Mr. Milla.

18  30.  Based on representations from Wonderphil, Plaintiff is informed and believes that
19  Wonderphil, through its principal Phil Gorn, acted as sales agent for Mr. Milla and, with the
20  authorization of Mr. Milla, had the right to enter into distribution agreements for the picture *The
21  Last Supper*.

22  31.  On or about November 10, 2014, Wonderphil (the sales agent) and Crystal Edge
23  (the distributor) entered into a contract entitled "distribution deal memo" (the "Last Supper Deal
24  Memo"), granting Crystal Edge the right to distribute *The Last Supper* in the United States,
25  Canada, the Middle East, Australia, and New Zealand (collectively, the "Last Supper Territories).
26  A true and correct copy of the distribution deal memo for *The Last Supper* is attached hereto as
27  Exhibit G.

28  32.  The Last Supper Deal Memo granted Crystal Edge all exploitation rights to *The*

*Last Supper* in the Last Supper Territories (including, but not limited to, Video, Pay TV and Free TV, PayPerView, Video on Demand, Ancillary, ClosedNet and Internet) except theatrical rights (collectively, the "Last Supper Rights").

33. The Last Supper Deal Memo was recorded with the US Copyright Office.

34. A $23,000 advance, paid against and fully recoupable from Crystal Edge's royalties and receipts in the Last Supper Territories, was payable, pursuant to the deal memo as follows: (i) 20% upon full and accepted delivery (ii) 20% upon the release of *The Last Supper* by Crystal Edge in North America and (iii) 60% upon 90 days after the release of *The Last Supper* in North America.

35. Pursuant to paragraph three of the Last Supper Deal Memo, there were certain conditions precedent that had to occur before Crystal Edge's payment obligations were triggered, which conditions could only be waived by Crystal Edge "in its sole discretion." These conditions included full delivery of the *The Last Supper* by Wonderphil at its sole cost no later than 15 days from the date of the Last Supper Deal Memo, Wonderphil providing clean chain of title in and to *The Last Supper*, and Crystal Edge's acceptance of the delivery of the picture.

36. While the parties had intended to enter into a long form agreement memorializing additional requirements and terms, the Last Supper Deal Memo by its terms was "binding" and "in full force and effect as the agreement between the parties" whether or not a long form agreement was ever signed.

37. The parties were negotiating the long form agreement for months and it was Crystal Edge's understanding that the parties were at the end of the negotiation process with only a few terms left to finalize. In fact, Crystal Edge had been waiting on Wonderphil's response to finalize the long form contract when Wonderphil began trying to escape its contractual obligations by claiming, among other things, that Plaintiff's name was not correctly listed in the Last Supper Deal Memo. Attached as Exhibit H is a true and correct copy of a letter dated August 26, 2015.

38. The signature page identified the parties as "Wonderphil Entertainment" and "Crystal Edge, LLC."

39. It was the intent of the parties that the entities entering into the Last Supper Deal

1  Memo be identified as "SP's Crystal Edge, LLC" and "Wonderphil Entertainment, LLC"—which
2  are their true names. The fact that this error occurred is the result of a scrivener's errors in the
3  recital of the entities' names.
4      40.    These scrivener's errors were the result of a mutual and/or unilateral mistake, which
5  prejudiced no party.
6      41.    Defendant Wonderphil also claimed that Plaintiff failed to tender the advance for
7  the *The Last Supper*, however Plaintiff's obligation to tender payment was conditioned, among
8  other things, on delivery being perfected, which has yet to occur.
9      42.    Instead of perfecting delivery as it was contractually obligated to do almost a year
10 ago, on August 25, 2015 Wonderphil took the position that there was no valid agreement between
11 the parties and therefore, Crystal Edge has no authority or right to represent, license, sell, or
12 market the picture anywhere in the world through any media. Attached as Exhibit I is a true and
13 correct copy of a letter dated August 25, 2015.
14     43.    On even date Wonderphil expressly repudiated the the Last Supper Deal Memo (to
15 the extent, as Wonderphil claims, there was a valid agreement) by refusing to perfect delivery,
16 demanding the return of its master of the picture and all other elements and documentation
17 previously delivered, and by expressly rescinding the deal memo.
18     44.    As a result, Wonderphil has stated that it is attempting to license the picture
19 elsewhere which is in violation of the Last Supper Deal Memo and Crystal Edge's exclusive
20 copyright license. Attached as exhibit J is a true and correct copy of a letter dated August 27,
21 2015.
22     45.    Furthermore, in an attempt to damage Plaintiff's business relationships, Wonderphil
23 incorrectly notified Sony Pictures Entertainment that Crystal Edge did not have the right to license
24 it the picture. *See* Exhibit F.

**FIRST CAUSE OF ACTION**

**[BREACH OF WRITTEN CONTRACT]**

(Against Defendant RLL and Defendant Young N Free)

28     46.    Plaintiff realleges and incorporates herein by reference each and every allegation

set forth in Paragraphs 12 through 28 hereinabove, inclusive, as though set forth at length herein.

47. Plaintiff has performed all the terms, conditions and covenants to be performed by it pursuant to the terms of the Lionheart Deal Memo, except those obligations, if any, that were excused by Defendant RLL's conduct.

48. Defendant RLL has materially breached the Lionheart Deal Memo by, among other things, the following: (1) failing to perfect delivery within the time allocated for delivery and (2) attempting to or in fact relicensing the picture in violation of Crystal Edge's exclusive distribution rights in the Lionheart Territories.

49. As a direct and proximate result of Defendant RLL's breaches of contract as alleged above, Plaintiff has suffered direct and consequential damages.

## SECOND CAUSE OF ACTION
## [BREACH OF WRITTEN CONTRACT]
(Against Defendant Wonderphil and Defendant Mr. Milla)

50. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 29 through 45 hereinabove, inclusive, as though set forth at length herein.

51. Plaintiff has performed all the terms, conditions and covenants to be performed by it pursuant to the terms of the Last Supper Deal Memo, except those obligations, if any, that were excused by Defendant Wonderphil's conduct.

52. Defendant Wonderphil has materially breached the Last Supper Deal Memo by, among other things, the following: (1) failing to perfect delivery within the time allocated for delivery and (2) attempting to or in fact relicensing the picture in violation of Crystal Edge's exclusive distribution rights in the Last Supper Territories.

53. As a direct and proximate result of Defendant Wonderphil's breaches of contract as alleged above, Plaintiff has suffered direct and consequential damages.

## THIRD CAUSE OF ACTION
## [REFORMATION]
(Against Defendant RLL)

54. Plaintiff realleges and incorporates by reference each and every allegation set forth

1  in paragraphs 12 through 28 hereinabove, inclusive, as though set forth at length herein.

2      55.    To the extent that defendant RLL asserts that the Lionheart Deal Memo is not
3  enforceable because the parties are erroneously described, this error arises because of a unilateral
4  mistake in that the Lionheart Deal Memo was at all times intended to indicate that the names of the
5  parties were "SP's Crystal Edge LLC" and "Richard the Lion Heart, LLC" and the agreement's
6  failure to do so is purely the result of a clerical error that occurred when the Lionheart Deal Memo
7  was drafted.

8      56.    RLL knew or should have known about the above mistakes given that it should
9  have realized when reading and negotiating the deal memo that its name was not properly
10 memorialized on the agreement.

11     57.    In the alternative to a finding of unilateral mistake, the failure of the Lionheart Deal
12 Memo to reflect the true intent of the parties resulted in a mutual mistake on the part of RLL and
13 Crystal Edge in that the parties believed that when the Lionheart Deal Memo was being executed it
14 was being executed by "SP's Crystal Edge LLC" and "Richard the Lion Heart, LLC."

15     58.    Plaintiff, to the extent necessary, seeks reformation of the Lionheart Deal Memo so
16 that it can be deemed to have been signed by SP's Crystal Edge, LLC and Richard the Lion Heart,
17 LLC rather than Crystal Edge LLC and Richard the Lionheart, LLC in order to reflect the true
18 intent of the parties.

19     59.    RLL will not be prejudiced if these clerical errors are corrected.

20     60.    If for any reason the Court, to the extent necessary, does not reform the Lionheart
21 Deal Memo and then enforce it, Plaintiff will suffer prejudice and/or pecuniary loss.

**FOURTH CAUSE OF ACTION**

**[REFORMATION]**

(Against Defendant Wonderphil)

25     61.    Plaintiff realleges and incorporates by reference each and every allegation set forth
26 in paragraphs 29 through 45 hereinabove, inclusive, as though set forth at length herein.

27     62.    To the extent that Defendants assert that the Last Supper Deal Memo is not
28 enforceable because the parties are erroneously described, this error arises because of a unilateral

mistake in that the Last Supper Deal Memo was at all times to intended to indicate that the names of the parties were "SP's Crystal Edge, LLC" and "Wonderphil Entertainment, LLC" and the agreement's failure to do so is purely the result of a clerical error that occurred when the Last Supper Deal Memo was drafted.

63. Wonderphil knew or should have known of the above mistakes given that it should have realized when reading and negotiating the deal memo that its name was not properly memorialized on the agreement.

64. In the alternative to a finding of unilateral mistake, the failure of the Last Supper Deal Memo to reflect the true intent of the parties resulted in a mutual mistake on the part of Wonderphil and Crystal Edge in that the parties believed that when the Last Supper Deal Memo was being executed it was being executed by "SP's Crystal Edge LLC" and "Wonderphil Entertainment, LLC."

65. Plaintiff, to the extent necessary, seeks reformation of the Last Supper Deal Memo so that it can be deemed to have been signed by SP's Crystal Edge, LLC and Wonderphil Entertainment, LLC rather than Crystal Edge, LLC and Wonderphil Entertainment in order to reflect the true intent of the parties.

66. Wonderphil will not be prejudiced if these clerical errors are corrected.

67. If for any reason the Court, to the extent necessary, does not reform the Last Supper Deal Memo and then enforce it, Plaintiff will suffer prejudice and/or pecuniary loss.

**FIFTH CAUSE OF ACTION**

**[COPYRIGHT INFRINGEMENT]**

(Against Defendant RLL and Defendant Young N Free)

68. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 12 through 28 hereinabove, inclusive, as though set forth at length herein.

69. Plaintiff is, and at all times alleged herein, the holder of the Lionheart Rights for the picture *Lionheart* in the Lionheart Territories.

70. At all relevant times, Defendant RLL was aware of Plaintiff's rights to *Lionheart*, having granted such rights to Plaintiff.

71. Without the permission of Plaintiff, Defendant RLL is attempting to relicense the *Lionheart* Picture to another distributor. In doing so, Defendant RLL is directly breaching the Lionheart Deal Memo and Plaintiff's copyright.

72. The foregoing acts of threatened copyright infringement have been willful and intentional, in disregard of and with indifference to Plaintiff's rights.

73. As a direct and proximate result of Defendant RLL's wrongful conduct and intentional acts, Plaintiff is entitled to compensatory damages, injunctive relief, and statutory damages of $150,000 pursuant to 17 U.S.C. § 504 (c)(2) for each act of infringement.

## SIXTH CAUSE OF ACTION

### [THREATENED COPYRIGHT INFRINGEMENT]

(Against Defendant Wonderphil and Defendant Mr. Milla)

74. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 29 through 45 hereinabove, inclusive, as though set forth at length herein.

75. Plaintiff is, and at all times alleged herein, the holder of the Last Supper Rights for the picture *The Last Supper* in the Last Supper Territories.

76. At all relevant times, Defendant Wonderphil was aware of Plaintiff's rights to *The Last Supper*, having granted such rights to Plaintiff.

77. Without the permission of Plaintiff, Defendant Wonderphil is attempting to relicense *The Last Supper* picture to another distributor. In doing so, Defendant Wonderphil is directly breaching the Last Supper Deal Memo and Plaintiff's copyright.

78. The foregoing acts of threatened copyright infringement have been willful and intentional, in disregard of and with indifference to Plaintiff's rights.

79. As a direct and proximate result of Defendant Wonderphil's wrongful conduct and intentional acts, Plaintiff is entitled to compensatory damages, injunctive relief, and statutory damages of $150,000 pursuant to 17 U.S.C. § 504 (c)(2) for each act of infringement.

## SEVENTH CAUSE OF ACTION

### [INJUNCTIVE RELIEF]

(Against Defendant RLL and Defendant Young N Free)

11
COMPLAINT

80. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 12 through 28 hereinabove, inclusive, as though set forth at length herein.

81. Defendant RLL is threatening and as a result, may or may not have already relicensed the *Lionheart* to another distributor in violation of the Lionheart Deal Memo.

82. Unless enjoined by this Court, Defendant RLL's conduct threatens to cause, and is causing, Plaintiff great and irreparable injury that cannot fully be compensated for or measured in money. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of its copyright and exclusive rights under copyright.

## EIGHTH CAUSE OF ACTION
## [INJUNCTIVE RELIEF]
(Against Defendant Wonderphil and Defendant Mr. Milla)

83. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 29 through 45 hereinabove, inclusive, as though set forth at length herein.

84. Defendant Wonderphil is threatening and as a result, may or may not have already relicensed the *The Last Supper* to another distributor in violation of the Last Supper Deal Memo.

85. Unless enjoined by this Court, Defendant Wonderphil's conduct threatens to cause, and is already causing, Plaintiff great and irreparable injury that cannot fully be compensated for or measured in money. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of its copyright and exclusive rights under copyright.

## NINTH CAUSE OF ACTION
## [DECLARATORY RELIEF]
(Against Defendant RLL)

86. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 12 through 28 hereinabove, inclusive, as set forth at length herein.

87. An actual controversy has arisen and now exists between Plaintiff and defendant RLL. Plaintiff contends that the Lionheart Deal Memo is valid and binding, that it is the exclusive distributor for the Lionheart Territories and holds the exclusive Lionheart Rights. Defendant RLL

disagrees.

88. Plaintiff desires a judicial determination of its rights and a declaration as to whether (1) The Lionheart Deal Memo is valid and binding (2) whether Plaintiff is the owner of the Lionheart Rights in the Lionheart Territories.

89. The declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties associated with *Lionheart*.

## TENTH CAUSE OF ACTION
## [DECLARATORY RELIEF]
(Against Defendant Wonderphil)

90. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 29 through 45 hereinabove, inclusive, as set forth at length herein.

91. An actual controversy has arisen and now exists between Plaintiff and defendant Wonderphil. Plaintiff contends that the Last Supper Deal Memo is valid and binding, that it is the exclusive distributor for the Last Supper Territories and holds the exclusive Last Supper Rights. Defendant Wonderphil disagrees.

92. Plaintiff desires a judicial determination of its rights and a declaration as to whether (1) The Last Supper Deal Memo is valid and binding (2) whether Plaintiff is the owner of the Last Supper Rights in the Last Supper Territories.

93. The declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties associated with the *The Last Supper*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment on its Complaint as follows:

1. For statutory damages and compensatory damages in a sum to be determined according to proof at trial;
2. For reformation of the Lionheart Deal Memo;
3. For reformation of the Last Supper Deal Memo;
4. Injunctive relief;
5. Declaratory relief;

6. For Plaintiff's attorneys' fees and costs in this action;

7. For prejudgment interest according to law; and

8. For such other and further relief as the Court deems just and proper.

Dated: March 3, 2016 THE LEICHTER FIRM,
A Professional Corporation


By: */s/ Kevin J. Leichter*
Kevin J. Leichter
Attorney for Plaintiff